IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | CRIMINAL NO.: 17-254 (FAB) |
| [8] JUAN AQUINO CALDERÓN, | |
| Defendant. | |

**REPORT AND RECOMMENDATION**

Co-defendant [8] Juan Aquino Calderón (hereinafter "Defendant" or "Mr. Aquino") was indicted for conspiring to distribute five kilograms or more of a mixture or substance containing cocaine and for possessing with intent to distribute five kilograms or more of a mixture or substance containing cocaine, in violation of Title 21, United States Code, Sections 841, 846. ECF No. 41. Defendant has filed a motion seeking sanctions against the United States based on spoliation of evidence. ECF No. 603. In particular, Defendant argues that "law enforcement failed to preserve the VACIS machine and scans that allegedly revealed 'anomalies' near the gas tank of Mr. Aquino's vessel." *Id.* at 1. Due to such failure, Defendant demands the dismissal of the indictment or alternatively, the suppression of the cocaine recovered from a hidden compartment in the vessel. *Id.* at 2.

The material facts are not in dispute and for purposes of this report, I will be relying on the facts as stated in Defendant's motion to dismiss the indictment or suppress evidence. ECF No. 603. Therefore, an evidentiary hearing is not necessary. *U.S. v. Cintron,* 724 F.3d 32, 36 (1st Cir. 2013) ("A criminal defendant has no presumptive right to an evidentiary hearing. Rather, a hearing is required only if the movant makes a sufficient threshold showing that material facts are in doubt or dispute, and that such facts cannot reliably be resolved on a paper record. Most

importantly, the defendant must show that there are factual disputes which, if resolved in his favor, would entitle him to the requested relief.") (citation and quotation omitted).

Around 3:00 pm on February 2, 2016, Mr. Aquino arrived at Fajardo in his boat named Pagoza, along with several passengers. Although the vessel had experienced mechanical problems near the island of Culebra, where it had been rescued by a maritime towing service, its original departure point had been the U.S. Virgin Islands ("USVI"). When law enforcement agents questioned Defendant about where he was coming from, he replied Culebrita, which was his most recent point of departure. Nevertheless, because some of Pagoza's occupants answered that they had originally departed from USVI, law enforcement agents seized the boat due to the purported inconsistency. Prior to this intervention at Fajardo, however, law enforcement agents at USVI had observed suspected drug traffickers repairing Mr. Aquino's vessel.

Customs officers moved Pagoza to another marina for further inspection by a K-9. The dog alerted to the presence of controlled substances at different places of the vessel, but nothing illegal was observed upon closer inspection. Law enforcement agents, however, decided to keep the vessel overnight for a more thorough inspection.

On February 3, 2016, federal law enforcement agents conducted a VACIS scan of the vessel and noticed anomalies near the gas tank. Eventually on that same day, law enforcement agents found 36 packages of cocaine in a hidden compartment from the interior of the vessel. Law enforcement agents, however, failed to take photographs of the interior of the vessel before their search.[1]

---

[1] Even though the parties have a discrepancy as to whether the law enforcement agents took any photographs of the contraband recovered inside the hidden compartment at the precise moment that they were found in the manner in which they were found, such controversy is immaterial to the conclusion of this report. *See* ECF Nos. 603, at 5; 657, at 6.

Over two years later, Mr. Aquino was arrested for the present charges in a superseding indictment. After a protracted discovery process seasoned with disputes, on February 14, 2023 the United States revealed that the "X-Ray has been decommissioned" and "[n]o [VACIS] images located." ECF No. 603-1. Almost ten months later, that is on December 11, 2023, Defendant filed the motion currently pending before the court seeking the imposition of sanctions.

Defendant maintains that he is a "blind mule," meaning "a person used by criminals to carry contraband across a border, who does not know that he is carrying the contraband." ECF No. 603 at 8. Without the VACIS scans and photographs showing how the interior of the vessel looked before the search was conducted, Defendant claims, irreplaceable exculpatory evidence has been lost that would have shown his lack of knowledge about the contraband in Pagoza. *Id.* For the reasons that ensue, however, Mr. Aquino's arguments are unpersuasive.

Two obstacles that a defendant must overcome to demonstrate that missing evidence rises to a constitutional violation were originally set by the United States Supreme Court:

> Whatever duty the Constitution imposes on the States to preserve evidence, that duty must be limited to evidence that might be expected to play a significant role in the suspect's defense. To meet this standard of constitutional materiality, evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.

*California v. Trombetta*, 467 U.S. 479, 488-489 (1984). Eventually, a third hurdle was added: "[U]nless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988). Accordingly, the U.S. Court of Appeals for the First Circuit has summed up the three prongs as follows: "A defendant who seeks to suppress evidence formerly in the government's possession therefore must show that the government, in failing to preserve evidence, (1) acted in bad faith when it destroyed evidence, which (2) possessed an

3

apparent exculpatory value and, which (3) is to some extent irreplaceable. Thus in missing evidence cases, the presence or absence of good or bad faith by the government will be dispositive." *U.S. v. Femia,* 9 F.3d 990, 993-994 (1st Cir. 1993).[2]

The analysis begins by focusing on what is actually the relevant missing evidence. Photographs of Pagoza's appearance before the post x-ray search was conducted is not evidence lost; it is evidence that never existed because the agents never took such pictures. The VACIS machine, on the other hand, has been decommissioned. Yes, the VACIS machine is not available anymore to the defense, but Defendant has failed to articulate how exactly being able to examine that equipment would somehow aid to support his theory that he was not aware of the contraband in his boat.[3] Therefore, the focus of the controversy boils down to one missing piece of evidence: the lost VACIS scans.

Presumably the VACIS scans would have helped Mr. Aquino show exactly where the cocaine was in the vessel and that the contraband was not easily accessible or apparent to anybody riding on Pagoza on February 2, 2016. Moreover, the fact that the agents did not take any pictures before the vessel was subject to x-rays and searched does not help to somehow fill in the gap left by the lost scans. Had he had those VACIS scans, Defendant posits, it would have been evident for a jury to see that it was impossible or highly unlikely for him to know the presence of cocaine in the boat.

There is, however, a problem with Defendant's argument: The government has conceded that the 36 packages of cocaine were in a hidden compartment. Actually, the government has conceded even more: The contraband was concealed so well that even after a dog alerted to the

---

[2] Intentional destruction or destruction of evidence due to gross negligence is not enough to meet the element of bad faith. *U.S. v. Garza,* 435 F.3d 73, 75 (1st Cir. 2006). "A successful prosecutorial misconduct argument must be premised upon independent evidence that the prosecution was somehow improperly motivated." *U.S. v. Gallant,* 25 F.3d 36, 39 n.2 (1st Cir. 1994)

[3] Defendant has also failed to persuasively show that the government acted in bad faith when it decommissioned the VACIS machine used on Pagoza.

4

presence of narcotics in Pagoza and the agents conducted what for lack of a better term could be described as a first round search, they found nothing. Therefore, the government cannot now turn and say to a jury that it was obvious that Mr. Aquino knew about the packages of cocaine *because the packages were readily visible, apparent or accessible in Pagoza*. Evidently they were not readily visible, apparent or accessible because even law enforcement agents with experience and training and assisted by a K-9 could not find the illicit drugs. Therefore, this is not a situation of missing exculpatory evidence that is irreplaceable. Nothing prevents Defendant from serving subpoenas to the agents that carried out the first round search to testify at trial about how despite their efforts, they were unable to find any packages of cocaine prior to the VACIS scans. If experienced agents and a trained dog could not find the drugs, it would not be a stretch for a fact finder to conclude that for Mr. Aquino and the remaining passengers of Pagoza the packages of cocaine were not readily visible, apparent or accessible. Of course, the government can still attempt to introduce other types of circumstantial evidence to show that Mr. Aquino knew what was in Pagoza's belly. However, unless the agents that conducted the first round search are willing to admit under oath their utter incompetence, they would have to acknowledge at trial, based on the undisputed evidence described by the parties in their motions, what the VACIS scans would have shown, namely that the cocaine was very well hidden and not readily visible, apparent or accessible to anybody riding on Pagoza, a fact consistent with Defendant's blind mule theory.

    Defendant cites *United States v. Salazar*, 317 F.Supp.3d 935 (W.D.Tex. 2018) and *United States v. Soriano,* 401 F.Supp.3d 396 (E.D.N.Y. 2019) for the proposition that the exculpatory value of the VACIS scans was readily apparent. These cases, however, are distinguishable. In *Salazar*, the defendant was found pushing a vehicle to a border checkpoint that eventually was found to have kilograms of liquid methamphetamine solution in the tank.

*Salazar,* 317 F.Supp.3d at 936. Five days before the defendant was indicted, the government destroyed the vehicle. *Id.* at 937. Nevertheless, in the case at bar Defendant has not alleged destruction of the vessel or the cocaine found in it.

In *Soriano*, the defendant was indicted for possession with intent to distribute heroin after customs officers found heroin in two plastic containers of food in her luggage. *Soriano*, 401 F.Supp.3d at 397. The defendant then sought dismissal of the indictment after the government "informed her that most of the items seized, including her belongings, had been destroyed by [Customs and Border Protection] officers, who also failed to prepare any written or photographic inventory of the materials before destroying them." *Id.* Once again, this case is distinguishable from the circumstances presently before the court. First, Mr. Aquino has not argued that the government has failed to prepare a written inventory of the items seized. Second, Mr. Aquino has not argued that the government has destroyed any items seized from him or the vessel. Third, Ms. Emma Soriano was trying to show that she was unaware of heroin found in her luggage, whereas Mr. Aquino is trying to show that that he was unaware of cocaine in a hidden compartment of a vessel that even agents and a dog could not find on a first round search. Obviously, Ms. Soriano's seized items played a much more pivotal role in showing that she was unaware of the items that others had packaged for her as a professional food courier, as the precise way or manner in which the items looked could bolster or weaken her defense theory.

One last matter needs to be addressed. Mr. Aquino claims that had he "known that this evidence was no longer available sooner, he could have filed dispositive motions to suppress or to dismiss the indictment or proceeded to trial at an earlier stage." ECF No. 603, at 16. This is not a hollow argument. The record is not shy in showing how the United States's handling of discovery in this case leaves much to be desired. *See* ECF Nos. 110, 124, 127, 130, 142, 155, 166, 181, 240, 253, 256, 303, 317, 326, 360, 386, 402, 420, 477, 493, 578, 585. Nevertheless,

even though Defendant found out about the missing VACIS scans and decommissioned equipment on February 14, 2023, he did not rush to file the instant motion to dismiss the indictment or suppress evidence due to spoliation evidence. He waited instead until December 11, 2023 to file it. ECF No. 603. Furthermore, on June 1, 2023, more than six months prior to the filing of the pending dispositive motion, Mr. Aquino requested that the case be set for trial even though he was already well aware of the missing evidence. ECF No. 493. This, of course, does not excuse the way that the government has dragged its feet in this case; but if Defendant felt so strongly about the missing evidence, he could have requested the setting of a trial or filed the motion to dismiss the indictment or suppress evidence promptly after the receipt of the U.S. Attorney's Office's letter dated February 14, 2023. ECF No. 603-1.

The United States' inability to find the VACIS scans at issue is at a minimum negligence. However, because the VACIS scans do not rise to the level of exculpatory evidence that is irreplaceable, it is recommended that Defendant's "Motion to Dismiss Indictment or Suppress Evidence based on Spoliation of Evidence" be DENIED.

The parties have fourteen (14) days to file any objections to this report and recommendation unless otherwise ordered by the court. Failure to file the same within the specified time waives the right to object to this report and recommendation. Fed. R. Civ. P. 72(b)(2); Fed. R. Civ. P. 6(c)(1)(B); D.P.R. Civ. R. 72(d); *see also* 28 U.S.C. § 636(b)(1); *Henley Drilling Co. v. McGee*, 36 F.3d 143, 150–51 (1st Cir. 1994); *United States v. Valencia*, 792 F.2d 4 (1st Cir. 1986).

IT IS SO RECOMMENDED.

In San Juan, Puerto Rico, this 6th day of February, 2024.

s/Marcos E. López<br>U.S. Magistrate Judge